**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 12-CR-2027-LRR |
| vs. | | **ORDER** |
| MICHAEL RECKER, | | |
| Defendant. | | |

---

### *TABLE OF CONTENTS*

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . 2

    A.   Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        1.   Grain elevator fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        2.   Bankruptcy fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.   Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  MOTION TO SEVER COUNTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   Same or Similar Character . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    B.   Common Scheme or Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    C.   Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.   MOTIONS TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.   Motion to Dismiss Count 12 . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        1.   Parties' arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    B.   Motion to Dismiss Count 13 . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        1.   Parties' arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        2.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# I. INTRODUCTION

The matters before the court are Defendant Michael Recker's: (1) "Motion to Sever Counts" (docket no. 27); (2) "Motion to Dismiss Count 12" (docket no. 29); (3) "Amended Motion to Dismiss Count 12" (docket no. 32); and (4) "Motion to Dismiss Count 13" (docket no. 28) (collectively, "Motions").

# II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

## A. Indictment

On October 23, 2012, a grand jury returned a seventeen-count Superseding Indictment ("Indictment") (docket no. 13) against Defendant. Counts 1 through 11 and Count 17 charge Defendant with various offenses relating to a grain elevator fraud. Counts 12 through 16 charge Defendant with various offenses relating to a bankruptcy fraud.

### 1. Grain elevator fraud

The grain elevator fraud arises out of an alleged scheme involving false grain elevator scale tickets. The Indictment alleges that, as part of this grain elevator fraud, Defendant caused Brad Haberman, a grain company employee, to issue false grain elevator scale tickets. Some of these tickets falsely claimed that the soybeans or corn that Defendant delivered were of a high quality when, in fact, the soybeans or corn were of a low quality. Other tickets falsely claimed that Defendant had delivered soybeans or corn when, in fact, he had made no such delivery. The grain company paid Defendant based on the information in the false grain elevator scale tickets. Defendant then paid Haberman for Haberman's part in the scheme. Defendant wrote checks to Haberman with false notations indicating that the checks were issued for legitimate purposes, such as the purchase of agricultural equipment. The Indictment alleges that Defendant executed this scheme from approximately November 11, 2008, to October 18, 2009.

The Indictment contains twelve counts relating to the grain elevator fraud. Count 1 charges Defendant with conspiring to falsely make, issue, forge or counterfeit official forms, specifically, grain elevator scale tickets, in violation of 18 U.S.C. § 371. Counts

2 through 9 charge Defendant with causing another to make, issue, alter, forge or counterfeit a false grain elevator scale ticket in violation of 7 U.S.C. §§ 87b and 87c. Counts 10 and 11 charge Defendant with making a false statement to a federal agent in violation of 18 U.S.C. § 1001. Specifically, Count 10 alleges that Defendant told Special Agents with the Internal Revenue Service ("IRS") that he did not know Haberman when, in fact, he did know Haberman. Count 11 alleges that Defendant told Special Agents with the IRS that he did not know about checks written to Haberman when, in fact, he knew about such checks. Finally, Count 17 charges Defendant with obstructing and impeding the administration of the internal revenue laws by engaging in financial transactions in a manner designed to hide and conceal income, including income derived from the grain elevator fraud, in violation of 26 U.S.C. § 7212.

### 2. *Bankruptcy fraud*

The Indictment also alleges that Defendant engaged in fraudulent conduct in connection with a bankruptcy proceeding. Specifically, the Indictment alleges that, on approximately April 5, 2009, Defendant sold a combine at auction for $52,039.00. Approximately two months later, Defendant filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of Iowa. In his bankruptcy petition and supporting documents, Defendant failed to disclose that he sold the combine. In a meeting of bankruptcy creditors, Defendant was questioned about the combine. Defendant claimed under oath that he sold the combine on behalf of R.M. and he denied having any ownership interest in the combine or its sale proceeds. Thereafter, Defendant filed a document with the United States Bankruptcy Court. The document was titled "Information For Judges Use Concerning the Issue of Whether to Deposit Funds or Not." Indictment at 14. Attached to the document was a letter purportedly from R.M. to the auction company stating that R.M. owned the combine and that Defendant was selling the combine on R.M.'s behalf. In fact, Defendant knew that R.M. had not written, signed or sent the letter. Furthermore, Defendant knew that R.M. did not have an ownership interest in the combine and that

Defendant had not sold the combine on R.M.'s behalf. The Indictment alleges that Defendant executed this scheme to defraud from approximately May 2009 to September 2010.

The Indictment contains five counts relating to the bankruptcy fraud. Count 12 charges Defendant with wire fraud in violation of 18 U.S.C. § 1343. Specifically, Count 12 alleges that, in furtherance of the scheme to defraud, Defendant caused the Clerk of Court for the United States Bankruptcy Court to transmit an interstate wire communication—specifically, the filing that included the letter purportedly from R.M. Count 13 charges Defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A. Specifically, Count 13 alleges that Defendant knowingly used a means of identification of another, that is, R.M.'s name and signature. Count 14 charges Defendant with bankruptcy fraud by concealment in violation of 18 U.S.C. § 152(1). Count 15 charges Defendant with bankruptcy fraud by false oath in violation of 18 U.S.C. § 152(2). Finally, Count 16 charges Defendant with falsification of records in a bankruptcy proceeding in violation of 18 U.S.C. § 1519.

### B. Motions

On January 7, 2013, Defendant filed the Motion to Sever Counts, the Motion to Dismiss Count 12 and the Motion to Dismiss Count 13. On January 9, 2013, Defendant filed the Amended Motion to Dismiss Count 12, which replaces the original Motion to Dismiss Count 12.[1] On January 28, 2013, the government filed a Resistance to the Motion to Sever Counts (docket no. 33), a Resistance to the Motion to Dismiss Count 12 (docket no. 35) and a Resistance to the Motion to Dismiss Count 13 (docket no. 34). Neither party

---

[1] In the Amended Motion to Dismiss Count 12, Defendant states that "[t]here are no substantive changes or additions made from the original Motion to Dismiss Count 12[;] rather, [there are] some proofreading errors that are corrected in this Amended Motion." Amended Motion to Dismiss Count 12 at 1. Accordingly, the court shall deny as moot the January 7, 2013 Motion to Dismiss Count 12 and address the Amended Motion to Dismiss Count 12 (hereinafter, "Motion to Dismiss Count 12").

requests a hearing on the Motions, and the court finds that a hearing is unnecessary. The Motions are fully submitted and ready for decision.

### III. MOTION TO SEVER COUNTS

In the Motion to Sever Counts, Defendant requests that the court sever Counts 1 through 11 and Count 17, which relate to the grain elevator fraud, from Counts 12 through 16, which relate to the bankruptcy fraud. Defendant first argues that Counts 1 through 11 and Count 17 are improperly joined with Counts 12 through 16 under Federal Rule of Criminal Procedure 8. Defendant alternatively argues that, even if joinder is proper under Rule 8, the court should nevertheless sever the counts pursuant to Federal Rule of Criminal Procedure 14. Because the court concludes that the counts are misjoined under Rule 8, the court finds it unnecessary to address Defendant's arguments under Rule 14.

Under Rule 8, an "indictment or information may charge a defendant in separate counts with [two] or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a); *see also United States v. Mann*, 701 F.3d 274, 289 (8th Cir. 2012) ("Rule 8(a) governs the joining of offenses and permits the joinder of offenses that are 'of the same or similar character or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.'" (quoting Fed. R. Crim. P. 8(a)). "'The rule is broadly construed in favor of joinder to promote judicial efficiency.'" *United States v. Midkiff*, 614 F.3d 431, 439 (8th Cir. 2010) (quoting *United States v. McCarther*, 596 F.3d 438, 441-42 (8th Cir. 2010)); *see also United States v. Taken Alive*, 513 F.3d 899, 902 (8th Cir. 2008) ("The rule is broadly construed in favor of joinder to promote the efficient administration of justice."). When determining whether joinder is proper under Rule 8, the court looks only to the allegations contained in the indictment. *See Schaffer v. United States*, 362 U.S. 511, 513 (1960) (noting that "[t]he allegations of the indictment . . . met the explicit provisions of Rule 8(b) as to joinder of defendants"); *see also United States v. Lane*, 474 U.S. 438, 447 (1986)

(discussing *Schaffer*); *United States v. Locklear*, 631 F.3d 364, 368 (6th Cir. 2011) ("'Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment.'" (quoting *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002))); *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998) ("An indictment must reveal on its face a proper basis for joinder." (citing *United States v. Bledsoe*, 674 F.2d 647, 655 (8th Cir. 1982))); *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir. 1985) ("[T]he test for misjoinder is what the indictment charges, not what the trial shows."); *cf.* 1A Charles Alan Wright et al., *Federal Practice & Procedure* § 143 (4th ed. 2012) (noting that "the propriety of joining offenses in a single instrument is typically determined by examining the allegations in the indictment" but noting that some courts "have looked beyond the face of the indictment at other evidence to determine whether joinder is proper" and citing cases).

In this case, the parties appear to agree that the grain elevator fraud counts and the bankruptcy fraud counts are not "based on the same act or transaction," Fed. R. Crim. P. 8(a), and the court agrees. Thus, joinder is proper only if the grain elevator fraud counts and the bankruptcy fraud counts "are of the same or similar character" or "are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

### A. Same or Similar Character

In the Motion to Sever Counts, Defendant contends that "the offenses are not [of] the same or similar character" because: (1) "[n]one of the offenses alleged in Counts 1-11 and 17 charge a violation of the same statute alleged in Counts 12-16"; (2) "[t]here is no similarity of victims"; (3) "[t]he modes of operation are completely different"; and (4) there is little overlap in the time frames of the grain elevator fraud and the bankruptcy fraud. Motion to Sever Counts at 8. Defendant further argues that "[j]oint proof does not exist between the two groups of [c]ounts" and, moreover, evidence of the grain elevator fraud would not be admissible in a separate trial on the bankruptcy fraud and evidence of the

bankruptcy fraud would not be admissible in a separate trial on the grain elevator fraud. *Id.* at 9.

In its Resistance to the Motion to Sever Counts, the government argues that the grain elevator fraud counts and the bankruptcy fraud counts are of the same or similar character because: "[B]oth schemes involved fraudulent conduct. Both schemes involved farm equipment. Both schemes involved [D]efendant falsifying documents related to farm equipment. Both schemes were designed to improve [D]efendant's financial position. And both schemes took place over the same short period of time." Resistance to Motion to Sever Counts at 5. The government further argues that, "[b]ecause of the similarities in the schemes," evidence of one scheme would be admissible at the trial of the other scheme under Federal Rule of Evidence 404(b) and because such evidence would be "intrinsic." *Id.* at 6.

"In applying the 'same or similar character' standard, [the Eighth Circuit Court of Appeals] has allowed the offenses to be joined when 'the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps.'" *United States v. Lindsey*, 782 F.2d 116, 117 (8th Cir. 1986) (per curiam) (quoting *United States v. Shearer*, 606 F.2d 819, 820 (8th Cir. 1979)); *accord United States v. Tyndall*, 263 F.3d 848, 849 (8th Cir. 2001). "Rule 8(a) does not require that offenses be of identical nature before they can be joined properly . . . ." *United States v. Hutchings*, 751 F.2d 230, 235 (8th Cir. 1984). Rather, the offenses need only be similar—that is, "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." *Lindsey*, 782 F.2d at 117 (alteration in original) (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980)) (internal quotation marks omitted).

In this case, the court finds that the grain elevator fraud counts and the bankruptcy fraud counts are not of the same or similar character, although the court recognizes that this case presents a close question. At an abstract level, the schemes bear some resemblance—each scheme involved fraudulent conduct that was "designed to improve

[D]efendant's financial position." Resistance to Motion to Sever Counts at 5. However, beyond that, the schemes have little in common. As Defendant notes in the Motion to Sever Counts, the schemes involved different victims and different modes of operation. *See* Motion to Sever Counts at 8.

Moreover, the court notes that the government frames this issue as whether each *group* of counts is of the same or similar character. The inquiry under Rule 8(a), however, is whether each *offense* is of the same or similar character. *See* Fed. R. Crim. P. 8(a) ("The indictment . . . may charge a defendant in separate counts with [two] or more offenses if the offenses charged . . . are of the same or similar character . . . ."). The grain elevator fraud counts charge Defendant with conspiring to issue false grain elevator scale tickets, causing another to issue false grain elevator scale tickets, making false statements relating to the grain elevator fraud and obstructing the administration of the internal revenue laws by concealing income derived from the grain elevator fraud. The bankruptcy fraud counts, on the other hand, charge Defendant with wire fraud, aggravated identity theft, bankruptcy fraud by concealment, bankruptcy fraud by false oath and falsifying records in a bankruptcy proceeding. Thus, each group of counts encompasses a broad array of offenses. The court acknowledges that some of the individual offenses have overlapping elements—for example, Count 10, charging Defendant with making a false statement to a federal official relating to the grain elevator fraud, and Count 15, charging Defendant with bankruptcy fraud by false oath, each require that the government prove that Defendant made a false statement. However, given the diversity of offenses related to each fraud, the court cannot conclude that all of the grain elevator fraud counts are of the "same type" as all of the bankruptcy fraud counts. *Lindsey*, 782 F.2d at 117 (quoting *Shearer*, 606 F.2d at 820).

The court has reviewed the government's arguments and finds them to be unpersuasive. First, the government contends that the grain elevator fraud and the bankruptcy fraud are "replete with similarities and connections," including that they both

involved farm equipment and false documents and they overlapped in time. Resistance to Motion to Sever Counts at 4. The court notes that the grain elevator fraud involved farm equipment only insofar as Defendant allegedly made false notations on checks to Haberman indicating that Defendant was purchasing farm equipment from Haberman when, in fact, Defendant was paying Haberman for Haberman's part in the fraudulent scheme. Moreover, although the government correctly notes that Defendant allegedly used false documents to perpetrate each scheme, the false documents at issue in the grain elevator fraud were false grain elevator scale tickets that Haberman issued while the false document at issue in the bankruptcy fraud was a forged letter Defendant used to substantiate his claim that he did not own the combine. In sum, although the schemes may share certain characteristics, the court does not find that these shared characteristics render the grain elevator fraud counts and the bankruptcy fraud counts to be of a similar character. Furthermore, while the court recognizes that there is an approximately six-month time period in which the two schemes overlapped—from approximately May 2009 to October 2009—this alone is an insufficient basis for joinder. *See Lindsey*, 782 F.2d at 117 (noting that joinder is proper under Rule 8(a) if the offenses are of the "same type" and occurred "over a relatively short period of time" and "the evidence as to each count overlaps" (quoting *Shearer*, 606 F.2d at 820) (internal quotation mark omitted)).

Second, the court finds that the cases the government cites in support of its argument are distinguishable. *See* Resistance to Motion to Sever Counts at 5 (arguing that "the similarities between the conduct described in Counts 2-9 and Counts 12-16 meet or exceed that which has previously been sufficient in the Eighth Circuit" and citing cases). Specifically, in two of the cases the government cites, *Midkiff*, 614 F.3d at 439-40, and *United States v. Moyer*, 313 F.3d 1082, 1085 (8th Cir. 2002), the Eighth Circuit did not address the same or similar character basis under Rule 8(a) but, rather, found that joinder was proper under one of the other bases set forth in Rule 8(a). *See Midkiff*, 614 F.3d at 339-40 (holding that joinder was proper because some of the "tax counts were based on the

9

same act or transaction as the fraud counts" and other "tax counts were connected to the remaining counts under a common scheme"); *Moyer*, 313 F.3d at 1085 (holding that joinder of various offenses was proper because "all of the charged offenses were parts of connected acts or transactions").

The third case the government cites, *Hutchings*, 751 F.2d at 235-36, is also distinguishable. In *Hutchings*, the indictment charged the defendant with three different schemes to defraud. *Id*. at 234. The Eighth Circuit held that joinder was proper because:

> [a]lthough differences exist[ed] among the charges as to who was defrauded and how the fraud was actually implemented, all of the charges basically stem[med] from [the defendant's] use of his position as president of [an insurance agency] to obtain money for himself and his corporation through fraudulent misrepresentations concerning the premiums of insurance policies sold by [the insurance agency].

*Id*. at 235-36. The Eighth Circuit did not explicitly state whether it found that the offenses were of a similar character or whether the offenses constituted parts of a common scheme or plan. *See id*. at 235 ("Rule 8(a) does not require that offenses be of identical nature before they can be joined properly; rather, joinder is appropriate even if the offenses are of similar character, or constitute parts of a common scheme or plan. We are satisfied that the joinder of the counts in the indictment complied with [R]ule 8(a)."). Regardless, *Hutchings* involved a defendant who used a position of power to perpetrate three different fraudulent schemes, all of which involved misrepresenting insurance premiums. There are no comparable facts in the instant case. The grain elevator fraud and the bankruptcy fraud each relate to entirely different conduct and there is no common theme or thread tying the two schemes together.

Finally, the court finds that the government's argument that there is overlapping evidence is without support. The government contends that evidence of one fraud would be admissible at a separate trial on the other fraud because such evidence would be "intrinsic" or, alternatively, admissible under Rule 404(b). Resistance to Motion to Sever

Counts at 6. The government's argument that the evidence is intrinsic is, apparently, premised on its argument that the grain elevator fraud and the bankruptcy fraud constitute parts of a common scheme or plan—an argument that the court rejects below. Insofar as the government argues that such evidence would be admissible under Rule 404(b), the government fails to identify how evidence of one fraud would be relevant at a trial on the other fraud.

Thus, in view of the foregoing, the court finds that the grain elevator fraud counts and the bankruptcy fraud counts are not of the same or similar character. Accordingly, joinder is not proper on this basis.

### *B. Common Scheme or Plan*

In the Motion to Sever Counts, Defendant also argues that the grain elevator fraud counts and the bankruptcy fraud counts do not constitute parts of a common scheme or plan because "there is no logical relationship between" the two frauds. Motion to Sever Counts at 9. The government, however, contends that a common scheme or plan existed because "Defendant, after failing to avert bankruptcy through his grain fraud, tried to salvage his financial well being by concealing the proceeds of his combine sale." Resistance to Motion to Sever Counts at 7.

The court finds that the government's argument is without merit. As noted above, the court looks only to the allegations in the Indictment to determine whether joinder is permissible. *See, e.g.*, *Wadena*, 152 F.3d at 848. Other than a brief overlap in time and Defendant's common goal of financial profit, there is nothing in the Indictment connecting the grain elevator fraud counts and the bankruptcy fraud counts. Thus, the court finds that the grain elevator fraud counts and the bankruptcy fraud counts are not part of a common scheme or plan and, consequently, joinder is not proper on this basis.

### *C. Summary*

In light of the foregoing, the court finds that none of the three bases for joinder under Rule 8(a) are applicable in this case. Accordingly, the court concludes that Counts

1 through 11 and Count 17, which relate to the grain elevator fraud, are improperly joined with Counts 12 through 16, which relate to the bankruptcy fraud. The court shall therefore sever Counts 1 through 11 and Count 17 from Counts 12 through 16 pursuant to Rule 8(a).

## IV. MOTIONS TO DISMISS

In the Motion to Dismiss Count 12 and the Motion to Dismiss Count 13, Defendant requests that the court dismiss Counts 12 and 13 pursuant to Federal Rule of Criminal Procedure 12(b)(3). Defendant contends that the court must dismiss these counts because they fail to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B) (permitting a defendant to file a motion to dismiss an indictment that fails to state an offense).

"In reviewing the sufficiency of an indictment, [the court] accept[s] the government's allegations as true, without reference to allegations outside the indicting document." *United States v. Steffen*, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012) (quoting *United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991)). As the Eighth Circuit recently noted:

> An indictment adequately states an offense if "it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."

*Mann*, 701 F.3d at 288 (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)); *accord Steffen*, 687 F.3d at 1109; *see also United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988) ("In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the facts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed."). "An indictment is normally sufficient if its language tracks the statutory language." *Sewell*, 513 F.3d at 821.

With these general principles in mind, the court shall turn to consider Defendant's Motion to Dismiss Count 12 and Motion to Dismiss Count 13.

## A. Motion to Dismiss Count 12

### 1. Parties' arguments

In the Motion to Dismiss Count 12, Defendant argues that the court should dismiss Count 12 pursuant to Rule 12(b)(3) because "Count 12 fails to charge . . . [D]efendant with any offense against the United States or the laws thereof." Motion to Dismiss Count 12 at 1. Count 12 of the Indictment provides, in relevant part:

> On or about August 27, 2009, in the Northern District of Iowa and elsewhere, defendant MICHAEL RECKER, for the purposes of executing, and attempting to execute, the scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations, knowingly caused the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa to transmit by means of wire communication in interstate commerce the pleading entitled "Information For Judges Use Concerning the Issue of Whether to Deposit Funds or Not." Specifically, the Clerk of Court for the United States Bankruptcy Court served a copy of defendant MICHAEL RECKER's pleading upon the office of the United States Trustee via e-mail, which was sent from Cedar Rapids, Iowa, through a sever located in the state of Maryland.

Indictment at 15. Defendant contends that Count 12 fails to state an offense because, "[f]irst, it is not reasonable, as a matter of law, that . . . [D]efendant should have known that the Clerk would take . . . [D]efendant's pro se pleading and forward it to the Trustee by the ECF email system." Motion to Dismiss Count 12 at 6. In other words, Defendant argues that he did not cause the wire communication because he could not reasonably foresee that the Clerk of Court would use a wire communication. Second, Defendant argues that "it is not reasonable, as a matter of law, that . . . Defendant should have known that[,] although the Trustee's office is in Waterloo, Iowa, . . . the server for the Clerk's email is located in the state of Maryland." *Id.* In other words, Defendant argues that he

could not reasonably foresee the interstate nature of the wire communication. Defendant also notes that, if the court dismisses Count 12, the court must also dismiss Count 13, the aggravated identity theft count, because Count 13 is predicated on Count 12.

In its Resistance to the Motion to Dismiss Count 12, the government contends that Defendant has failed to demonstrate a defect in the Indictment as required under Rule 12(b)(3). The government argues that Count 12 "(1) charges [D]efendant with each and every element of wire fraud under 18 U.S.C. § 1343 and (2) is supported by detailed information describing [D]efendant's commission of the offense." Resistance to Motion to Dismiss Count 12 at 2. The government further argues that *United States v. Bryant*, 766 F.2d 370 (8th Cir. 1985), is controlling and forecloses Defendant's argument that the government must prove that he reasonably foresaw the interstate nature of the wire communication. To the extent that Defendant is arguing that the government will be unable to prove any element of wire fraud, the government also notes that "there is no criminal equivalent to a motion for summary judgment." Resistance to Motion to Dismiss Count 12 at 5 (citing *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)).

### 2. Analysis

The court finds that Count 12, alleging a violation of 18 U.S.C. § 1343, sufficiently states an offense. Title 18, United States Code, Section 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. The Eighth Circuit has held that the essential elements of wire fraud are: "1) [the defendant] joined a scheme to defraud; 2) [he or she] intended to defraud; 3) it

was reasonably foreseeable that interstate wire communications would be used; and 4) the wires were, in fact, used." *United States v. Louper-Morris*, 672 F.3d 539, 556 (8th Cir. 2012); *see also United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) ("'The essential elements of wire fraud are a scheme to defraud, the use of interstate wires incident to the scheme, and an intent to cause harm." (quoting *United States v. Edelmann*, 458 F.3d 791, 812 (8th Cir. 2006)).

In this case, Count 12 closely tracks the language of the statute and includes all of the essential elements of wire fraud. Count 12 alleges: "(1) [that Defendant] engaged in a fraudulent scheme; (2) that interstate wires were used to send [D]efendant's false document from Iowa to Maryland and back to Iowa; and (3) that [D]efendant intended to fraudulently obtain money." Resistance to Motion to Dismiss Count 12 at 3. In addition, Count 12 describes with particularity the alleged scheme so as to "apprise [Defendant], with reasonable certainty, of the nature of the accusation . . . and . . . enable the court to say that the facts stated are sufficient in law to support a conviction." *Steffen*, 687 F.3d at 1113 (quoting *Brown v. United States*, 143 F. 60, 62 (8th Cir. 1906)). Thus, the court agrees with the government that Count 12 of the Indictment contains all of the essential elements of wire fraud, sufficiently puts Defendant on notice to enable him to prepare a defense and adequately describes the offense such that Defendant may plead a conviction or acquittal as a bar to subsequent prosecution. *See Mann*, 701 F.3d at 288.

To the extent that Defendant asks the court to dismiss Count 12 because the government will be unable to prove that Defendant caused the Clerk of Court to use an interstate wire communication, there is no authority permitting the court to grant relief. As the government notes, "there is no criminal equivalent to a motion for summary judgment." Resistance to Motion to Dismiss Count 12 at 5 (citing *Ferro*, 252 F.3d at 968); *see also United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995) ("There being no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case, *see* Fed. R. Civ. P. 56(c), the government has no duty to reveal all of its proof before

15

trial."); *United States v. Kowal*, 486 F. Supp. 2d 923, 934 (N.D. Iowa 2007) ("There is no federal criminal procedure . . . for a pre-trial determination of sufficiency of the evidence." (alteration in original) (quoting *Ferro*, 252 F.3d at 968) (internal quotation marks omitted)). Defendant, however, is free to renew his argument in the form of a motion for judgment of acquittal at the close of the government's evidence.

The court further notes that, contrary to Defendant's argument, the government is not required to prove that Defendant could reasonably foresee the interstate nature of the wire communication. In its Resistance to the Motion to Dismiss Count 12, the government argues that *Bryant* is directly on point and forecloses Defendant's argument. The court agrees. In *Bryant*, the Eighth Circuit found "that the words of the statute, the general purpose of interstate requirements, and the decisions of other courts support the conclusion that the accused need not know or foresee that the communication was interstate." *Bryant*, 766 F.2d at 374. While Defendant contends that a Third Circuit Court of Appeals case, *United States v. Bentz*, 21 F.3d 37 (3d Cir. 1994), holds otherwise, the court is not bound by Third Circuit precedent. Moreover, as the government notes in its Resistance to the Motion to Dismiss Count 12, an unpublished Third Circuit decision found that *Bentz* "does not address the question [of] whether the interstate nature of the wire communication must be reasonably foreseeable." *United States v. Veras de los Santos*, 184 F. App'x 245, 253 n.5 (3d Cir. 2006). The court further notes that several other Courts of Appeals have concluded that a defendant need not reasonably foresee the interstate nature of the wire communication. *See United States v. Tum*, ___ F.3d ___, ___, No. 11-1624, 2013 WL 388002, at *5 (1st Cir. Feb. 1, 2013) ("The wire-fraud statute's interstate-nexus requirement is purely jurisdictional and not a substantive element of the offense, meaning the government did not have to prove that [the defendant] had reason to think that a communication would cross state lines. Instead, all that the government had to show was that it was reasonably foreseeable to a person in [the defendant's] shoes that a wire communication would be made to further the scheme." (footnote omitted)); *United States*

*v. Richards*, 204 F.3d 177, 207 (5th Cir. 2000) ("For a defendant to be convicted of wire fraud, it is sufficient that the defendant could reasonably have foreseen the use of the wires; the interstate nature of the wire communication need not have been reasonably foreseeable."), *overruled on other grounds by United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002); *United States v. Lindemann*, 85 F.3d 1232, 1241 (7th Cir. 1996) ("[The government] need not prove that the interstate nature of the [communication] was foreseeable."); *United States v. Blackmon*, 839 F.2d 900, 907 (2d Cir. 1988) ("This court has unambiguously held that there is no *mens rea* requirement as to the purely jurisdictional element of interstate communication under the wire fraud statute.").

Thus, in light of the foregoing, the court shall deny the Motion to Dismiss Count 12. Count 12 of the Indictment sufficiently states an offense. Defendant is, of course, free to raise any argument regarding the sufficiency of the evidence at the appropriate time.

### B. Motion to Dismiss Count 13

### 1. Parties' arguments

Defendant also requests that the court dismiss Count 13 of the Indictment pursuant to Rule 12(b)(3). Count 13 provides:

> On or about August 27, 2009, in the Northern District of Iowa, defendant MICHAEL RECKER, did knowingly use without lawful authority a means of identification of another person during and in relation to the offense set out in Count 12 above. Specifically, defendant MICHAEL RECKER submitted a l[e]tter dated May 22, 2009, with the name and the purported signature of R.M., known to defendant to be a real person, to the United States Bankruptcy Court for the Northern District of Iowa in an effort to conceal from the bankruptcy court, the bankruptcy trustee, and defendant MICHAEL RECKER's creditors that defendant MICHAEL RECKER had an ownership interest in the proceeds from the sale of a John Deere 9610 combine.

Indictment at 15-16. Defendant argues that the facts alleged in Count 13, if proven, would not amount to aggravated identity theft because a "letter is not a 'means of identification'

so that an identity theft occurred." Motion to Dismiss Count 13 at 3. Defendant further argues that, even "[i]f such a letter did satisfy the definition of 'means of identification[,']
. . . [D]efendant did not 'use' the letter in terms of the aggravated identity statute; that is,
. . . [D]efendant did not assume the identity of [R.M.] when . . . [D]efendant submitted the letter to the bankruptcy clerk of court." *Id.*

In its Resistance to the Motion to Dismiss Count 13, the government argues that Count 13 sufficiently states an offense because it contains all of the essential elements of aggravated identity theft. The government further contends that, contrary to Defendant's argument, a name is a means of identification under the plain language of 18 U.S.C. § 1028(d)(7). Finally, the government argues that Defendant used a means of identification within the meaning of the aggravated identity theft statute because he "represented to the bankruptcy court that R.M. wrote a letter that [D]efendant in fact wrote. He did so in order to shield his sale proceeds from bankruptcy creditors. Therefore, [D]efendant used R.M.'s identity to commit the felonies of wire fraud and bankruptcy fraud." Resistance to Motion to Dismiss Count 13 at 5.

### 2.    *Analysis*

Under 18 U.S.C. § 1028A(a)(1), "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" is guilty of aggravated identity theft. 18 U.S.C. § 1028A(a)(1). The Eighth Circuit has held that, "[t]o support a conviction for aggravated identity theft, the government must prove that the defendant (1) knowingly used (2) the 'means of identification' of another person (3) without lawful authority (4) during and in relation to a violation of [an enumerated felony]." *United States v. Hines*, 472 F.3d 1038, 1039 (8th Cir. 2007) (per curiam); *see also United States v. Kowal*, 527 F.3d 741, 746 (8th Cir. 2008) ("In order to convict [the defendant] under [18 U.S.C. § 1028A(a)(1),] the government must prove that [the defendant] knowingly used the means of identification of another person without lawful authority during and in relation to

an enumerated felony."). The defendant must know "that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'" *Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009).

The court finds that Count 13 of the Indictment sufficiently states an offense. Count 13 closely tracks the language of the statute and contains all of the essential elements of aggravated identity theft. Defendant's argument that a "letter is not a 'means of identification,'" Motion to Dismiss Count 13 at 3, is without merit. The "means of identification" at issue in Count 13 is not a "letter" but, rather, the name and signature contained in the letter. *See* Indictment at 15 (alleging that Defendant "submitted a l[e]tter . . . with the name and the purported signature of R.M."). Title 18, United States Code, Section 1028 defines "means of identification" as:

> any name or number that may be used, alone or in conjunction with any other information, to identity a specific individual, including any—
>
> (A)     name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number . . . .

18 U.S.C. § 1028(d)(7). As the government notes in its Resistance to the Motion to Dismiss Count 13, the statute is phrased in the disjunctive—that is, it uses the word "or"—and, accordingly, a name alone constitutes a means of identification. *See also Hines*, 472 F.3d at 1039 ("The term 'means of identification' includes another person's name *or* social security number." (emphasis added)). *See generally United States v. Smith*, 35 F.3d 344, 346 (8th Cir. 1994) ("The ordinary usage of the word 'or' is disjunctive, indicating an alternative. Constructing the word 'or' to mean 'and' is conjunctive, and is clearly in contravention of its ordinary usage."). Therefore, the court finds that the Indictment sufficiently alleges that Defendant used a means of identification—specifically, R.M.'s name and signature. *See* 18 U.S.C. § 1028(d)(7); *Hines*, 472 F.3d at 1039; *see also United*

*States v. Blixt*, 548 F.3d 882, 886-67 (9th Cir. 2008) (holding that a signature is a means of identification); *United States v. Lewis*, No. 4:10cr52-RH/WCS, 2010 WL 3468668, at *2 (N.D. Fla. Sept. 1, 2010) (collecting cases finding that a signature constitutes a means of identification).

Furthermore, contrary to Defendant's argument, there is no requirement in 18 U.S.C. § 1028A that a defendant "assume the identity" of another, Motion to Dismiss Count 13 at 3; rather, the statute requires that a defendant "use" a means of identification of another. 18 U.S.C. § 1028A(a)(1). In this case, the Indictment alleges that Defendant used the means of identification of R.M. when he "submitted a l[e]tter . . . with the name and the purported signature of R.M." Indictment at 15. Although Defendant argues that this act does not qualify as "using" a means of identification, he cites no authority in support of his argument and the court finds it to be without merit.

Thus, in light of the foregoing, the court shall deny the Motion to Dismiss Count 13. Count 13 of the Indictment sufficiently states an offense and the court finds that the allegations in Count 13, if proven, constitute a violation of 18 U.S.C. § 1028A. Defendant is, of course, free to raise any argument regarding the sufficiency of the evidence at the appropriate time.

## V. CONCLUSION

In light of the foregoing, the court **HEREBY ORDERS**:

(1)    Defendant's Motion to Sever Counts (docket no. 27) is **GRANTED**. Counts 1 through 11 and Count 17 of the Indictment (docket no. 13) are severed from Counts 12 through 16. In other words, the court will hold two trials. The court will schedule the trials back-to-back. The government is **DIRECTED** to file a notice on or before **March 8, 2013**, indicating which group of counts it wishes to try first.

(2)    Defendant's Motion to Dismiss Count 12 (docket no. 29) is **DENIED AS MOOT.**

(3)    Defendant's Amended Motion to Dismiss Count 12 (docket no. 32) is **DENIED**.

(4)    Defendant's Motion to Dismiss Count 13 (docket no. 28) is **DENIED**.

**DATED** this 1st day of March, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA